UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| AIMEE HANKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:11-cv-4048-SLD-JAG |
| | ) |
| DENNIS BURTON, ET AL., | ) |
| | ) |
| Defendants. | ) |

<u>ORDER</u>

Plaintiff Aimee Hankins ("Hankins") filed her Complaint in this Court alleging various civil rights violations under 42 U.S.C. § 1983 against three states, four state agencies, and several individual state employees involved with supervising her probation in Arkansas, Missouri, and Illinois.  The named Defendants, which Hankins alleges are each jointly and severally liable, include: (1) the State of Arkansas ("Arkansas"); (2) the Sharp County Arkansas Probation Office ("Sharp (AR) Probation Office"); (3) Sharp County (AR) Probation Officer Dennis Burton ("Burton"), a resident of Arkansas; (4) the Baxter County Arkansas Probation Office ("Baxter (AR) Probation Office"); (5) Baxter County (AR) Probation Officer Gene Forsyth ("Forsyth"), a resident of Arkansas; (6) Baxter County (AR) Probation Officer Dusty Smith ("Smith"), a resident of Arkansas; (7) the State of Missouri; (8) the Division of Probation and Parole of the Department of Corrections of the State of Missouri; (11) Missouri Department of Corrections Probation Officer Craig Chronister, a resident of Missouri; (12) the State of Illinois ("Illinois"); (13) Mercer County Probation and Court Services, an agency of the State of Illinois ("Mercer (IL) Probation and Court Services"); (12) Illinois Department of Corrections Parole Officer Tim

1

Lowe, a resident of Illinois; (13) the Ozark, Missouri County Sheriff's Office; and (14) Ozark (MO) Sheriff Raymond Pace ("Pace"), a Missouri resident.

Presently before the Court are five distinct Motions to Dismiss. The moving Defendants seek dismissal based on sovereign immunity and/or lack of personal jurisdiction. (*See* ECF Nos. 35, 41, 51, 54, 56.) Because the moving parties are either immune from this lawsuit or beyond the jurisdiction of this Court, the Court GRANTS all of the motions.

## I.   BACKGROUND

Hankins was released from prison on March 2, 2007, and placed on probation. Hankins' time on probation included transfers between four counties and three states pursuant to an interstate compact allowing the transfer of paroled or probationary prisoners to be monitored in different states.[1] Initially, Hankins' probation was monitored in Arkansas by Officer Dennis Burton of the Sharp County (AR) Probation Department. (Compl. ¶¶ 25-27.) Hankins claims that Burton took an "immediate dislike to her" because he was friends with her ex-husband, who was involved in the domestic violence that led to her imprisonment. (*Id.*)

Hankins' first probation transfer was within Arkansas, from Sharp County (AR) to Baxter County (AR). (Compl. ¶ 29.) Hankins alleges that this transfer was necessary because of "the meanness and spite with which . . . Burton dealt with her." (*Id.*) Despite the transfer, Burton continued to supervise her probation status and maintain custody of her records. (Compl. ¶ 28.) In Baxter County (AR), Hankins' probation was monitored by Officers Gene Forsyth and Dusty Smith. (Compl. ¶¶ 29-31.)

---

[1] According to Hankins, the law of relevance to the present motions is the Interstate Parole Reciprocal Agreement Act, Ill. Rev. Stat. 1965, ch. 38. (Pl.'s Omnibus Opp'n to Defs.' Mots. to Dismiss at 6, n.4, ECF No. 62.) However, that law is no longer in force. The Court will therefore proceed with its analysis as if Hankins' arguments cited the present version of the relevant statute: the Interstate Compact for Adult Offender Supervision, 730 Ill. Comp. Stat. 5/5-6-3.

In 2008, Hankins was transferred to Howell County, Missouri. In Howell County (MO), her supervision was monitored by Officer Craig Chronister of the Missouri Department of Corrections, Division of Probation and Parole. (Compl. ¶ 32.) Thereafter, in 2009, Hankins requested a transfer to Illinois to be closer to her children. (Compl. ¶ 34.) Her transfer was granted, and she was placed under the supervision of Officer Tim Lowe and, Hankins claims, the Mercer County Probation and Court Services of the State of Illinois. (Compl. ¶ 34.) Hankins concedes that she was treated "fairly" by Officers Forsyth, Smith, Chronister, and Lowe, but asserts that each was under an affirmative duty to maintain complete and accurate probation records. (Compl. ¶¶ 30, 33, 35.)

During her time in Illinois, Hankins claims to have questioned the termination date of her probation on several occasions. (Compl. ¶ 36.) According to Hankins, Officer Lowe told her that her probation termination date was determined by Arkansas officials. (*Id.*) Hankins alleges that she repeatedly requested copies of her Arkansas records but was told that Officer Burton indicated that he "would consider such a request to be a probation violation and use it to throw [Hankins] back in prison." (Compl. ¶ 36.) Hankins further asserts that she was kept on probation at least through February 10, 2011, when she was given a document that purportedly indicated that her probation ended nearly a year earlier, in early 2010. (Compl. ¶ 45.) Hankins therefore claims that she was wrongly kept on probation for a year longer than she should have been and that this represented a severe curtailment of her individual liberty interests in violation of her civil rights. (Compl. ¶ 49.)

In addition to Hankins' allegations arising from her time on probation, Hankins also makes a claim against the Sheriff of Ozark County, Missouri, stemming from an event that occurred after her probation was supposedly over. For this claim, Hankins contends that in April

2011, Raymond Pace, the Sheriff of Ozark County, Missouri, sent patrol officers to the residence where Hankins was living with her grandparents. (Compl. ¶ 51.) Hankins alleges that the officers told her grandparents that there was a warrant for Hankins' arrest. (*Id.*) Hankins disputes the existence of any such warrant and instead asserts that the threat of arrest was meant to intimidate her, though she does not provide any explanation as to what the Ozark County Sheriff's Office was attempting to accomplish by the alleged act of intimidation. (Compl. ¶ 52.) Regardless, Hankins claims to have suffered "extreme stress and anxiety" upon learning of the threat of an arrest warrant. (Compl. ¶ 53.) Hankins also alleges that her attorney requested a copy of the warrant from Sheriff Pace but never received a reply. (Compl. ¶¶ 54-55.) For their part, Defendants Pace and Ozark County do not dispute that an officer of the Ozark County Sheriff's Office made unsuccessful attempts to serve an arrest warrant, a copy of which they attached to their Motion, on Hankins in Udall, Missouri, on or around April 2011. (Ozark Cnty.'s Mem. at 2, ECF No. 36.) However, they assert that they had no involvement with Hankins' probationary issues. (*Id.*)

Hankins' Complaint alleges seven § 1983 violations and one count of intentional or negligent infliction of emotional distress based on the alleged unauthorized extension of her probation. (Compl. ¶¶ 67-105.) Hankins named as Defendants to these charges: the State of Arkansas; the Sharp County (AR) and Baxter County (AR) probation departments; Arkansas Probation Officers Burton, Forsyth, and Smith; the State of Missouri; the Department of Corrections Division of Probation and Parole of the State of Missouri; Missouri Probation Officer Chronister; the State of Illinois; Mercer County (IL) Probation and Court Services; Illinois Probation/Parole Officer Lowe; the Ozark County (MO) Sheriff's Office; and Sheriff Pace. Hankins contends that she is entitled to money damages arising from each Defendants'

breach of their affirmative duty to maintain accurate records of her probation and that "[t]he ongoing intentional misconduct and malfeasance by all defendants . . . was performed with malice and willful and wanton indifference to, and, deliberate disregard for [her] statutory civil rights." (Compl. ¶ 56.)  She further alleges that each Defendant is jointly and severally liable for all damages arising from her alleged injuries.  (*See, e.g.*, Compl. ¶ 73.)

The Defendants have responded to the Complaint with several motions to dismiss.  These motions argue, among other things, that Hankins' Complaint should be dismissed on the grounds of sovereign immunity and lack of personal jurisdiction.  In her opposition, Hankins correctly acknowledges that she cannot maintain a suit against the State of Arkansas, the State of Missouri or the State of Illinois as they have immunity from her suit under the Eleventh Amendment or against the Mercer County (IL) Probation and Court Services who were incorrectly included as parties.  (Pl.'s Omnibus Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") 2, 9, ECF No. 62.)  Based on this concession, the Court GRANTS the motions to dismiss filed by the State of Arkansas, the State of Missouri, the State of Illinois, and the Mercer County (IL) Probation and Court Services.  Hankins does, however, challenge the motions to dismiss filed by the other Defendants.[2]

## II.  LEGAL STANDARD

### A.  Motions to Dismiss

In order to survive a Rule 12(b)(6) motion, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and

---

[2] The only named Defendant who has not filed a Motion to Dismiss is Officer Tim Lowe. However, upon review of the Summons returned by Hankins (ECF No. 21) and the factual assertions regarding Officer Lowe included in Defendant Mercer County's Motion to Dismiss (ECF No. 42 at 5), the Court concludes that Officer Lowe was not properly served in accordance with the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 4(e).

must "give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quotations omitted)). The claim must be facially plausible, and the factual allegations should allow the court to draw a "reasonable inference" that the purported misconduct occurred. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A "formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555.

The complaint does not need to allege "all, or any, of the facts logically entailed by the claim and it certainly need not include evidence." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Additionally, the factual allegations of the complaint are presumptively true and are viewed in the "light most favorable to the plaintiff." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (citation omitted).

### B.     Eleventh Amendment Immunity

When seeking to assert claims against state entities or state actors, the claims must comply with the constraints of the Eleventh Amendment. *Brown v. Budz*, 398 F.3d 904, 917 (7th Cir. 2005). The Eleventh Amendment has been consistently interpreted as affirming the immunity of a state "from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citations omitted). States, state agencies, and state officials are each protected to some degree by Eleventh Amendment immunity. *Kroll v. Bd. of Trustees of Univ. of Illinois*, 934 F.2d 904, 907 (7th Cir. 1991). Suits against states are barred from federal court except where the state has expressly waived its immunity or where Congress has invoked its Fourteenth Amendment powers to abrogate sovereign immunity. *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). State agencies are treated as "arms of the state" for Eleventh

Amendment purposes and share in the immunity of the states. *Id*. (quoting *Kroll*, 934 F.2d at 907). Suits against state officers in their official capacity are barred if the state, and not the officer, is the true target of the suit. *Kroll* 934 F.2d at 907. If the suit can be said to be against the state, by being a suit for "retrospective relief—*i.e.*, money damages payable from the state treasury," Eleventh Amendment immunity applies, and the suit cannot be maintained. *Id.* at 908.

### C.     Personal Jurisdiction

When personal jurisdiction is raised as grounds for a motion to dismiss, the plaintiff bears the burden of making a prima facie showing that jurisdiction is proper. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Personal jurisdiction is governed by the law of the forum state. *Id*. The personal jurisdiction "long arm" statute in Illinois allows for the exercise of personal jurisdiction "on any basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 Ill. Comp. Stat. 5/2-209 (c) (2008); *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). The statute has been interpreted in such a way that there is "no operative difference between these two constitutional limits." *Mobile Anesthesiologists*, 623 F.3d at 443.

The key question is therefore whether the exercise of personal jurisdiction here would comport with Constitutional Due Process requirements. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). Generally, a court will have personal jurisdiction over an out-of-state defendant if the defendant "purposely established minimum contacts with a state such that he or she 'should reasonably anticipate being haled into court' there." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Any exercise of jurisdiction must not "offend traditional notions of fair play and substantial justice."

*Id.* at 700-01 (quoting *Int'l Shoe Co. v. Wash. Office of Unemployment Comp. and Placement*, 326 U.S. 310, 316 (1945)).

**III.   ANALYSIS**

    **A.   The Arkansas Probation Defendants**

The Arkansas Probation Defendants include the Sharp County (AR) Probation Office, the Baxter County (AR) Probation Office, and Probation Officers Burton, Forsyth, and Smith. These Defendants argue that Hankins' Complaint fails to state a claim upon which relief can be granted because they are state entities and state officials immune under the Eleventh Amendment from suit for actions undertaken in their official capacity. (Arkansas Defs.' Br. in Supp. Mot. to Dismiss ("Arkansas Defs.' Br.") 5, 13, ECF No. 56.) Hankins opposes the motion by arguing that the probation offices are county agencies and therefore are not entitled to Eleventh Amendment immunity. (Pl.'s Opp'n 3.)

The key issue to resolving the Arkansas Defendants' immunity is to determine whether the Arkansas probation office defendants are state or county agencies. In the absence of waiver by the state, the Eleventh Amendment provides state agencies with sovereign immunity. *See Kroll v. Bd. Of Trs. of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991). The immunity afforded under the Eleventh Amendment does not extend to the agencies of political subdivisions (i.e., counties and municipalities) within the state. *See Mt. Healthy City Sch. Dist. Bd. Of Educ. V. Doyle*, 429 U.S. 274, 280 (1977). The Arkansas Defendants assert that the probation offices are not separate county entities; rather, they are merely local branch offices of the Arkansas Department of Community Correction. (Arkansas Defs.' Br. 13.) In support, they cite an Arkansas Code provision which indicates that probation offices in Arkansas are regional

8

branches of the Arkansas Department of Community Correction, a state agency.[3] (*Id.*) Hankins opposes the Arkansas Defendants' evidence by arguing that the mere presence of the word "County" in the name of the probation offices demonstrates that they are county agencies. Hankins' opposition lacks merit. Regardless of the name applied to the offices, it is apparent that these probation offices within Arkansas are branches of a state agency and, as such, they are immune from suit under the Eleventh Amendment. *P. R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (explaining that "[a]bsent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court.") (internal quotations omitted).

Additionally, the Arkansas Defendants allege that because the Probation Offices are state entities, Burton, Forsyth, and Smith are state officials protected under the Eleventh Amendment. (Arkansas Defs.' Br. 5.) The Court agrees. The Seventh Circuit has consistently held that suits against state officers in their official capacities are barred by the Eleventh Amendment. *Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011); *Brown*, 398 F.3d at 917 (claims for monetary damages from defendants acting in their official capacity are barred by the Eleventh Amendment); *MCI Telecomms. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 336-37 (7th Cir. 2000) (explaining that the Eleventh Amendment bars claims against state officers acting in their official capacity when the state is the real party in interest). Indeed, Hankins' own Opposition concedes that Eleventh Amendment immunity extends to "the state, its instrumentalities, and its officers in their official capacities." (Pl.'s Opp'n 3.) Because Hankins is attempting to sue state officials in

---

[3] While the Arkansas Defendants cited "Ark. Code Ann. Section 12-27-15," that statute appears inapplicable to the present dispute. However, the Court assumes that the Arkansas Defendants meant to cite to Ark. Code Ann. § 12-27-125, which establishes the Arkansas Department of Community Correction and allows for the creation of additional "regional community correction facilities" as the Department deems necessary. *See* Ark. Code Ann. § 12-27-125(b)(4) (2006).

their official capacity, she fails to state a legally cognizable claim against the Arkansas Defendants.

Even though Hankins' Complaint facially seeks relief against the Arkansas probation officers only in their official capacity, if the Court were to construe Hankins' allegations as including claims against those officers in their individual capacity the Complaint would still have to be dismissed for lack of personal jurisdiction. The Arkansas Defendants specifically challenge personal jurisdiction in their motion, arguing that they do not have the requisite "minimum contacts" with Illinois to justify specific or general personal jurisdiction over them. (Arkansas Defs.' Br. 5-8.) Hankins responds by arguing that the Interstate Compact for Adult Supervision is a "contract" between the sending and receiving states which supports personal jurisdiction over the individual Arkansas Defendants. (Pl.'s Opp'n 5-7.) However, the mere existence of an agreement between states regarding the transfer of probationers does not mean that Probation Officers supervising the interstate transfer of probationers "purposefully availed themselves of the privilege of conducting activities" within the receiving state, nor should approving the transfer of a probationer reasonably have led the officers to anticipate being haled into court in the receiving state. *Hodgson v. Miss. Dept. of Corr.*, 963 F. Supp. 776, 796 (E.D. Wis. 1997). The Court therefore concludes that exercising personal jurisdiction over the individual Arkansas Defendants would offend the requirements of due process.

    **B.**    **The Missouri Defendants**

        **1.**    **The Missouri Department of Corrections and Officer Chronister**

Like the Arkansas Defendants, the Missouri Department of Corrections and Missouri Probation and Parole Officer Craig Chronister seek dismissal of Hankins' Complaint based on the immunity provided by the Eleventh Amendment. In her Complaint, Hankins explicitly

identifies the Missouri Department of Corrections as a "duly organized state agency," and makes no argument that it is not a state agency with Eleventh Amendment immunity. (Compl. ¶ 11); *see also Singletary v. Missouri Dept. of Corr.*, 423 F.3d 886, 890 (8th Cir. 2005) (holding in part that the Missouri Department of Corrections is entitled to Eleventh Amendment immunity as a state agency). Thus, as a state agency the Missouri Department of Corrections is subject to suit only if there is an explicit waiver of sovereign immunity by the state or abrogation of immunity by Congress. *See Joseph*, 432 F.3d at 748 (quoting *Kroll*, 934 F.2d at 907). Here, Hankins does not assert that there has been any abrogation or waiver of immunity. The Missouri Department of Corrections is therefore immune from this suit.

As with the individual Arkansas Defendants, regardless of whether Chronister is sued in his official or personal capacity, the suit against him cannot be maintained in this Court. First, a suit by Hankins against Chronister in his official capacity is barred by sovereign immunity. *See Brown*, 398 F.3d at 918. Consequently, the Court must dismiss the Complaint against Chronister in his official capacity. Second, a suit by Hankins against Chronister in his individual capacity cannot be maintained by this Court. As explained in the foregoing section, the transfer of a probationer does not create the requisite minimum contacts with the receiving forum in order for the Court to exercise personal jurisdiction over probation officers of the transferring state.

        **2.**        **The Ozark County Sheriff's Department and Sheriff Pace**

Hankins' Complaint alleges that the Ozark County Defendants sought to intimidate her by attempting to serve her with an arrest warrant while she was living with her grandparents in April 2011. (Compl. ¶¶ 51-55.) The Ozark County Defendants seek dismissal arguing that the Court lacks personal jurisdiction over them. The Court agrees with the Ozark County Defendants. There is no apparent connection between Hankins' allegations against the Ozark

County Defendants and those regarding her allegations of being wrongfully kept on probation. Rather, Hankins is seeking to hale these Missouri defendants into a federal district court in Illinois for acts that happened in Missouri involving Missouri residents. Since the allegations against the Ozark County defendants have nothing to do with the state of Illinois, it would be wholly unfair to compel them to submit to the jurisdiction of this Court to defend against them when there has been no showing that they purposefully availed themselves of the privilege of conducting activities within Illinois. *See Purdue*, 338 F.3d at 780 (citing *Burger King Corp.*, 471 U.S. at 475; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Therefore, this Court cannot exercise personal jurisdiction over the specific claims Hankins makes against the Ozark County Defendants.

  Nor has Plaintiff established that the exercise of general personal jurisdiction over the Ozark County Defendants would be appropriate. General personal jurisdiction over an out-of-state defendant complies with the due process requirements of the Fourteenth Amendment only if the defendant has such a systematic and continuous relationship with the forum state that "it would be fundamentally fair to require it to answer in a . . . court in any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Id.* at 787. Where general personal jurisdiction exists, the defendant's extensive contacts with the state are sufficient to subject the defendant to jurisdiction within the state's courts for any action, even if the defendant's contacts with that state are entirely unrelated to the acts giving rise to the litigation. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).

  Here, Hankins alleges that the Ozark County Defendants have established systematic and continuous general contacts in Illinois by participating in the Interstate Compact for Adult Offender Supervision. (Pl.'s Opp'n 6.) Hankins specifically argues that by joining the Interstate

Compact "the State of Arkansas contracted with the States of Missouri and Illinois, in a manner allowing for the continuous and systematic general business contacts between these states to allow the non-Illinois resident defendants to travel to Illinois to remove [Hankins] back to Arkansas or Missouri." (Pl.'s Opp'n 7.) Hankins' assertions are flawed in two ways. First, Hankins has not demonstrated that the Ozark County Sheriff's Office is a state agency that could conceivably be covered by the State of Missouri's entry into the Interstate Compact for Adult Offender Supervision. Rather, on the record before the Court, the Ozark County Sheriff's Office appears to be a local entity that is not itself part of the interstate compact. Second, even if the sheriff's office was considered a party to the Interstate Compact for Adult Offender Supervision, the existence of that interstate agreement does not, as discussed above, provide the requisite contacts to create personal jurisdiction over those individuals involved in implementing and supervising the interstate transfer of probationers.

Since there is no basis for the exercise of either specific or general personal jurisdiction over the Ozark County Defendants, the Court must dismiss them from this suit.

### IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motions to Dismiss.

Entered this 3rd day of August, 2012.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE