IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| AIMEE HANKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:11-cv-04048-SLD-JEH |
| | ) |
| DENNIS BURTON, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Before the Court are Defendant Tim Lowe's Motion to Dismiss, ECF No. 79, and Plaintiff Aimee Hankins's Objections, ECF No. 86, to Magistrate Judge John A. Gorman's Order of June 3, 2013, which denied Plaintiff's Motion for Entry of Default, ECF No. 74, against Defendant Lowe. For the following reasons, the Magistrate Judge's Order, ECF No. 78, is AFFIRMED, and Defendant Lowe's Motion to Dismiss, ECF No. 79, is GRANTED.

**BACKGROUND**

Hankins was released from prison on March 2, 2007, and placed on probation[1] in Sharp County, Arkansas. She was transferred multiple times, and in 2009, following a request to be placed closer to her children, ended up in Mercer County, Illinois, under the supervision of Officer Lowe. Compl. ¶¶ 25–34, ECF No. 1. While in Illinois, Hankins questioned the

---

[1] Lowe argues that Hankins was actually released on parole, not probation as she claims. Def.'s Mem. Supp. Mot. Dismiss 4–5 n.2, ECF No. 80. Deciding the proper terminology is irrelevant to disposition of Lowe's Motion to Dismiss. Accordingly, keeping in mind the deference accorded to a plaintiff's factual allegations at this stage, *see Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009), the Court will refer to Hankins's term of conditional release as "probation" in this Order.

termination date of her probation on several occasions. *Id.* at ¶ 36. Lowe allegedly told her that her termination date was determined by Arkansas officials, and when she repeatedly requested copies of her records, was told that her Sharp County Probation Officer, Dennis Burton, indicated he "would consider such a request to be a probation violation and use it to throw [Hankins] back in prison." *Id.* at ¶ 36. According to Hankins, she remained on probation until at least February 10, 2011, when Lowe gave her a document she claims indicated her probation actually ended in early 2010. *Id.* at ¶ 45. Hankins claims she was wrongfully kept on probation during the interim in violation of her civil rights. *Id.* at ¶ 49.

On June 22, 2011, Hankins sued three states, four state agencies, and several individual governmental employees, alleging claims under 42 U.S.C. § 1983 as well as intentional and negligent infliction of emotional distress arising from the extension of her probation. *Id.* at ¶¶ 67–105. The Court exercised jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), and 1367(a). On August 3, 2012, the Court dismissed all counts against all defendants except for Lowe, who had not yet been served. Order of Aug. 3, 2012, ECF No. 65. Lowe was finally served on or about October 28, 2012. Def.'s Resp. Obj. 1, ECF No. 87. Because Lowe is an Illinois Department of Corrections employee, he sent a request for legal representation in this matter to the Department's Office of the Chief Counsel. Def.'s Resp. Mot. Entry Default 2, ECF No. 72. The Department received his request on or about November 2, 2012, but did not forward it to the Office of the Attorney General until May 7, 2013. Lowe received state counsel the following day. *Id.*

Hankins moved for entry of default against Lowe on May 2, 2013. Pl.'s Mot. Entry Default, ECF No. 74. On May 15, 2013, Lowe responded to Hankins's motion for entry of

default, ECF No. 72, and moved for an extension of time to answer Hankins's complaint, ECF No. 73. Finding that Lowe was technically in default but had demonstrated good cause for his lengthy silence, Judge Gorman entered an Order on June 3, 2013, ECF No. 78, denying Hankins's Motion for Entry of Default and granting Lowe leave to file a motion to dismiss. Hankins moved for reconsideration of her motion for entry of default, ECF No. 84, which Judge Gorman denied. Hankins lodged her Objection to the magistrate's determination, ECF No. 86. Now before the Court are: (1) Hankins's Objection to Judge Gorman's Order denying entry of default, ECF No. 86, and (2) Lowe's Motion to Dismiss, ECF No. 79.

## DISCUSSION

**I. Objection to Magistrate's Order**

    **A. Legal Standard**

The Court will uphold a magistrate judge's ruling on a nondispositive pretrial matter unless clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). A defendant must serve an answer within 21 days of being served with a summons and complaint unless service has been waived. Fed. R. Civ. P. 12(a)(1)(A). Rule 55 provides for entry of default "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . ." Fed. R. Civ. P. 55(a). Entry of default is only justified "if the defaulting party has exhibited a willful refusal to litigate the case properly." *Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003) (citation omitted). Such willfulness manifests itself as a "continuing disregard for the litigation or for the procedures of the court." *Id.* (citation omitted).

    **B. Analysis**

Hankins objects to Judge Gorman's denial of entry of default on the grounds that Lowe

offered no reasonable explanation for his delayed appearance. Pl.'s Obj. 1, ECF 85. Lowe responds that he did not anticipate his employer's failure to timely lodge his request with the Attorney General. Def.'s Resp. Obj. 3, ECF No. 87. He attributes his delay in appearing at least somewhat to the fact that, because Hankins originally erroneously identified Lowe as a Mercer County and not Illinois State employee, *see* Compl. ¶ 16, and Mercer County had previously appeared by private counsel, there was no reason for the Illinois Attorney General to anticipate Lowe's request. Def.'s Resp. Obj. 3. Within eight days of receiving state counsel, Lowe had responded to Hankins's motion for entry of default, and had moved for more time to answer her complaint.

Judge Gorman noted that, by not responding or otherwise appearing following service of Hankins's complaint for over six months, Lowe missed the Rule 12 answer deadline. However, Judge Gorman found that Lowe's explanation for the delay justified denying the motion for entry of default. Order 1–2, ECF No. 78.

Hankins casts Lowe's delay as "a bad faith attempt to give law enforcement another opportunity to arrest Plaintiff . . ., to destroy or further manipulate evidence, allow evidence to grow stale, or see if Plaintiff was going to pursue the case." Pl.'s Obj. 4. Hankins, however, offers not a shred of evidence in support of this theory. Lowe's delay represents at worst excusable neglect. There is no evidence of bad faith on his part, and most if not all of the delay was caused by actors over whom he had no control. Further, he immediately participated in this Court's proceedings upon finally receiving legal counsel. Lowe's actions do not manifest a "willful refusal to litigate the case properly." *See Davis*, 321 F.3d at 646. Judge Gorman's denial of entry of default against Lowe, therefore, is not clearly erroneous or contrary to law, and

will be upheld.

**II. Motion to Dismiss**

In his Motion to Dismiss, Lowe argues: (1) Hankins provides insufficient allegations to plausibly state her § 1983 and other tort claims; (2) public documents attached to Lowe's Motion to Dismiss, ECF No. 79, Ex. 1, of which the Court may properly take judicial notice, establish that Hankins was not improperly kept under supervision past her authorized release date; and (3) any suit against Lowe in his official capacity for monetary relief fails to state a claim under § 1983 and is barred by the Eleventh Amendment and sovereign immunity. *Id.* at ¶¶ 4–7; Pl.'s Mem. Supp. Mot. Dismiss, ECF No. 80.  Because Hankins fails to state any claims for relief under § 1983 and state law, the Court does not reach Lowe's other arguments.  Hankins's claims against Lowe are dismissed.

    **A. Legal Standard**

Rule 8(a) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In evaluating a complaint's sufficiency, legal conclusions are not entitled to the assumption of truth granted to factual allegations.  *Id.*  The Seventh Circuit has identified the practical requirements of *Twombly* and *Iqbal* for federal pleading:

    First, a plaintiff must provide notice to defendants of her claims.  Second, courts must

> accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### B. Section 1983 Claims

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must sufficiently allege that (1) a person acting under color of state law (2) deprived her of a right, privilege, or immunity secured by the Constitution or laws of the United States. *London v. RBS Citizens, N.A.*, 600 F.3d 742, 745–46 (7th Cir. 2010). There is no dispute that Lowe was acting under color of state law. He contends, however, that Hankins fails to plausibly allege that he violated any of her federal rights.

#### 1. Right to Privacy

Courts have articulated two main areas of constitutional privacy rights: (1) the Fourteenth Amendment protects a person's interest in avoiding disclosure of personal matters and making important decisions regarding marriage, procreation, contraception, family relationships, and child rearing and education without government interference; and (2) the Fourth Amendment provides a "a certain zone or expectation of privacy" in the search and seizure context. *Roach v. City of Evansville,* 11 F.3d 544, 550 (7th Cir. 1997).

Hankins's allegations do not reach the areas protected by the Fourteenth Amendment. Her sole conceivably-relevant assertion is that "defendants intruded into plaintiff's personal affairs without reasonable basis." Compl. ¶ 70. This vague, unsubstantiated, and conclusory statement cannot support a plausible Fourteenth Amendment privacy claim. *See Brooks*, 578

F.3d at 581.

Regarding her Fourth Amendment privacy, the closest Hankins comes to factually alleging an unconstitutional search or seizure is her claim that each month a probation officer came to her house "to check on [her] and the status of her home." Compl. ¶ 41. However, she does not allege that Lowe conducted any search or seizure during such visits, nor does she make any other factual allegations that would support such an inference. Her formulaic accusations, such as that defendants "unlawfully invaded Plaintiff's constitutional right [to] privacy, without any right or authority to do so, and against plaintiff's will," *id.* at ¶ 68, are legal conclusions not entitled to an assumption of truth. *See Iqbal*, 556 U.S. at 678. Read in the most favorable light, Hankins's assertions still fail to inform Lowe of what unlawful conduct he engaged in. *See Brooks*, 578 F.3d at 581. Hankins's § 1983 claim that Lowe violated her right to privacy is therefore dismissed.

### 2. Right to Interstate Travel

The Supreme Court has recognized that various constitutional provisions, including the Privileges and Immunities Clause of Article IV and the Fourteenth Amendment, protect a citizen's right to interstate travel. *Williams v. Wisconsin*, 336 F.3d 576, 581 (7th Cir. 2003) (citing *Saenz v. Roe*, 526 U.S. 489, 498–504 (1999)). Parolees and probationers may validly have this freedom reduced by the conditions of their release for the duration of their sentence. *See Alonzo v. Rozanksi*, 808 F.2d 637, 638 (7th Cir. 1986). The right to interstate travel has at least three components. "It protects the right of a citizen of one State to enter and leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and for those travelers who elect to become permanent

residents, the right to be treated like other citizens of that State." *Saenz*, 526 U.S. at 500.

As to how Lowe violated her Hankins's right to travel, her complaint provides little guide. The only relevant allegations are that each defendant "unlawfully prevented, impeded, or otherwise interfered with Plaintiff's constitutional right to travel, without any right or authority to do so," Compl. ¶ 77, and that her "freedom of movement, including interstate travel to, for example, visit with friends and relatives[,] was severely restricted," *id.* at ¶¶ 43, 77. She does not discuss how Lowe interfered with her entering or leaving any particular state on even one occasion, nor do her allegations suggest Lowe treated her like an unfriendly alien or gave her disparate treatment assuming she changed her permanent residency.

Hankins cites *Ketchum v. City of West Memphis*, 974 F.2d 81, 83 (8th Cir. 1992) as an example of how the defendants violated her right to travel. Compl. ¶ 80. *Ketchum* found that the plaintiff stated a § 1983 claim for violation of his right to interstate travel when he pleaded that police ordered him to walk across a bridge from Arkansas to Tennessee with a broken toe. 974 F.2d at 83. The court noted that defendants had no "right to banish or exile him to Tennessee." *Id.* Ketchum has no bearing on this case, however, as Hankins—who was only on probation in Illinois due to her requested transfer to be near her children, Compl. ¶ 34—does not allege that Lowe forced her to enter or leave Illinois or any other state.

Hankins's allegations are too bare and conclusory to support an inference that Lowe committed any variety of deprivation of her right to travel; they thus fail to adequately notify Lowe of the nature of Hankins's claim. *See Brooks*, 578 F.3d at 581. Accordingly, her § 1983 claim against Lowe based on deprivation of her right to interstate travel is dismissed.

### 3. Right of Access to Courts

The right of individuals to pursue legal redress for nonfrivolous claims is protected by the First and Fourteenth Amendments.  *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995).  Therefore, efforts by state actors to impede an individual's access to courts or administrative agencies may support a constitutional claim under 42 U.S.C. § 1983.  *Id.*  Judicial access must be "adequate, effective, and meaningful."  *Id.* (quoting *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (internal quotation marks omitted).  A denial of access allegation, however, is necessarily ancillary to the underlying legal claim allegedly thwarted.  *Christopher v. Harbury,* 536 U.S. 403, 415 (2002).  A complaint alleging denial of access must identify a "nonfrivolous" underlying claim and the remedy lost to the plaintiff as a result of the denial of access.  *Id.* at 415–16.

Hankins fails to allege a nonfrivolous underlying claim that Lowe's conduct prevented her from pursuing.  Regarding Lowe's purported role in blocking access to her probation information, Hankins only pleads that (1) Lowe told her the ultimate termination date was determined by Arkansas officials, including Burton, and (2) Hankins was told by an unnamed source—which the Court will construe to be Lowe, reading implications from the complaint's paragraph structuring in the light most favorable to Hankins—that Burton said he would retaliate if Hankins requested her Arkansas records.  Compl. ¶¶ 36–37.  While Hankins sweepingly alleges that all defendants were acting in concert and had an affirmative duty to stop each other's wrongdoing, *e.g., id.* at ¶ 59, she does not indicate how this blanket claim—legally insufficient on its own, *see Iqbal*, 556 U.S. at 678—plausibly refers to this instance.  There is no factual allegation suggesting Lowe ever blocked her access.  Far from it, Hankins claims it is Lowe who

9

provided Hankins, albeit belatedly, with the document allegedly indicating her entitlement to release in 2010. Compl. ¶ 45. As alleged, Lowe's actions are at least equally consistent with—and far more suggestive of—lawful conduct than they are of tortious behavior. *See Twombly*, 550 U.S. at 567 (holding that allegations of conspiracy were insufficient where facts were at least equally consistent with alternative, law-abiding-behavior explanation). Hankins fails to plead sufficient factual material to state a plausible § 1983 claim against Lowe based on violation of her right of access to courts. Therefore, this claim is dismissed.

### 4. Right to Effective Assistance of Counsel

Hankins's complaint does not specify whether her Fifth or Sixth Amendment right to effective assistance of counsel was violated. The Fifth Amendment's protection against self-incrimination provides a right to have counsel present during custodial interrogation. *Winsett v. Washington*, 130 F.3d 269, 278 (7th Cir. 1997) (citations omitted). The Sixth Amendment textually limits its right to counsel to "criminal prosecutions." U.S. Const. amend VI. Thus, there is no Sixth Amendment right to effective assistance of counsel in civil cases. *Stanciel v. Gramley*, 267 F.3d 575, 581 (7th Cir. 2001) (rejecting ineffective assistance of counsel in § 1983 suit) (citations omitted). This includes suits seeking post-conviction relief from a criminal sentence. *See Murray v. Giarratano*, 492 U.S. 1, 7–8 (1989).

Hankins does not allege the existence of any criminal proceeding in which Lowe allegedly interfered with her obtaining effective assistance of counsel. The instant suit is civil in nature. Further, Hankins does not allege any custodial interrogation at which she sought and was denied counsel by Lowe. Therefore, Hankins has failed to state a claim for deprivation of right to counsel under either the Fifth or Sixth Amendments.

### 5. Due Process

Hankins alleges that her Fourteenth Amendment procedural due process rights were violated through extension of her term of probation without notice and a hearing. Compl. ¶ 95. At the threshold, however, Hankins provides no factual allegations creating a reasonable inference that Lowe had anything to do with denying her due process. *See Iqbal*, 556 U.S. at 678. She alleges that Lowe told Hankins the date of her release was determined not by him, but Arkansas officials, and Hankins never disputes the truth of this claim. Compl. ¶ 36. She also credits Lowe with providing what notice—albeit delayed—she received of the alleged extension of her supervision. *See id.* at ¶ 45. These allegations—the only ones seemingly related to Lowe's role in denial of due process—are more exculpatory than inculpatory, *see Twombly*, 550 U.S. at 567, and provide Lowe with no notice as to what conduct of his is at issue, *see Brooks*, 578 F.3d at 581. Accordingly, Hankins's claim against Lowe for denial of procedural due process is dismissed.

**B. State Law Claims**

Federal courts exercising supplemental jurisdiction apply state substantive law, *Timmerman v. Modern Indus., Inc.*, 960 F.2d 692, 696 (7th Cir. 1992), which includes choice-of-law rules, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941). Under Illinois choice-of-law rules, the law of the place of injury presumptively governs unless there is a greater or more significant relationship to another state. *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 903 (Ill. 2007). While Hankins does not specify which state's tort law she is suing under, Lowe's alleged infliction of emotional distress occurred while Hankins was under his supervision in Illinois, and there is no indication that other relevant events occurred out-of-state.

Accordingly, the Court applies the law of Illinois to these claims.

### 1. Intentional Infliction of Emotional Distress

The elements of the tort of intentional infliction of emotional distress ("IIED") under Illinois law are: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress." *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997) (citations omitted). "'[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities'" are not actionable. *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (quoting *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)). The conduct must go "beyond all bounds of decency" and be "considered intolerable in a civilized society" to be considered extreme and outrageous. *Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010). Otherwise non-actionable behavior may be deemed extreme and outrageous due to "'the defendant's improper use of a position of power which gives him the ability to adversely affect the plaintiff's interests.'" *Id.* (quoting *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 212 (1992)). "The more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment." *McGrath*, 533 N.E.2d at 809. Greater latitude, however, is given to a defendant pursuing what he reasonably believes is a legitimate objective. *See id.* at 810.

Hankins neither expressly alleges that Lowe engaged in any "extreme and outrageous" conduct nor do the few factual allegations concerning Lowe plausibly give rise to such an

inference. This would not necessarily be fatal to her claim if she plausibly accused Lowe of abusing the position of power he exercised over her as her probation officer. *See Fox*, 600 F.3d at 842. She does not. She states that Lowe "generally treated her fairly," but claims he breached his duty to maintain accurate information regarding her sentence. Compl. ¶ 35. While Hankins claims Lowe ultimately provided her with the document disclosing an alleged earlier release date, *id.* at ¶ 45, she does not allege that Lowe knew of the date or had any control over her release.

Rather, Hankins recites without challenging Lowe's alleged statement that Hankins's release date was determined by Arkansas officials. *Id.* at ¶ 36. The threat of using her information request as a reason to revoke her release is attributed to Burton. *Id.* at ¶ 37. According to Hankins, therefore, Lowe exerted comparatively little control over her fate and made no threats to exercise his power to her detriment. *See McGrath*, 533 N.E.2d at 809. At most, the Complaint charges Lowe with negligence in pursuing his objectively legitimate goal of supervising Hankins in accordance with her sentence. Such conduct can hardly be described as "beyond the bounds of all decency," *see Fox,* 600 F.3d at 842, and does not support the inference that Lowe acted with the tort's requisite intent or reckless disregard, *see Van Stan*, 125 F.3d at 567. Accordingly, Hankins has failed to state an IIED claim against Lowe.

### 2. Negligent Infliction of Emotional Distress

In evaluating negligent infliction of emotional distress ("NIED") claims, Illinois courts differentiate between "bystanders" and "direct victims." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009). Bystanders must, due to being in the "zone of danger," have had "'reasonable fear for [their] own safety' which caused them emotional distress" and be able to

"demonstrate physical injury or illness resulting from the emotional distress." *Id.* at 703 (quoting *Kapoulas v. Williams Ins. Agency, Inc.*, 11 F.3d 1380, 1382 (7th Cir. 1993)).  By comparison, a direct victim may not recover for emotional distress suffered as a result of a defendant's negligence unless the distress accompanied a contemporaneous physical injury to or impact on the plaintiff.  *Id.* (citing *Rickey v. Chicago Transit Authority*, 457 N.E.2d 1, 2 (Ill. 1983)).

Hankins, the direct victim of Lowe's alleged negligence, alleges no physical injury or impact inflicted on her by Lowe.  Even analyzed as a bystander, Hankins does not expressly or inferentially allege that Lowe caused her to fear for her safety, leading to emotional distress manifesting in a physical injury or illness.  She therefore fails to state an NIED claim against Lowe.

## CONCLUSION

The June 3, 2013 Order, ECF No. 78, denying Plaintiff Hankins's Motion for Entry of Default against Defendant Lowe is AFFIRMED.  Defendant Lowe's Motion to Dismiss, ECF No. 79, is GRANTED.  All of Plaintiff Hankins's claims against Defendant Lowe are dismissed.  The Clerk is directed to enter judgment, closing the case.

Entered this 12th day of March, 2014.

                                                                 s/ Sara Darrow
                                                                 SARA DARROW
                                                     UNITED STATES DISTRICT JUDGE